## ALLEN and others *v.* JONES and others, Intervenors.[1]

*(Circuit Court, E. D. Louisiana. May 14, 1885.)*

**1. BILLS OF LADING AND WAREHOUSE RECEIPTS.**

The acts of Louisiana, No. 150 of 1868 and No 72 of 1876, mean that the bills of lading and warehouse receipts for property shipped or warehoused shall fully represent the property, so that a transfer of those paper titles shall vest in the transferee the property as fully as the delivery of the property itself.

**2. LIEN OF VENDOR OF AGRICULTURAL PRODUCTS.**

Article 3227 of the Civil Code of Louisiana gives the right to the vendor to seize the things sold in whatsoever hands or place they may be found, and to enforce his lien for the price with preference over all other claims, as well against those who hold under title acquired through bills of lading as against those whose title is evidenced by actual delivery.

At Law.

*Charles S. Rice,* for plaintiffs.

*Thomas L. Boyne* and *George Denegre,* for intervenors.

BILLINGS, J. This cause having been tried without a jury, the same having been waived, the court finds the following as the facts of the case:

The plaintiffs sold to the defendants on the third day of June, 1884, 268 bales of cotton, for the sum of $12,665.25, the terms of the sale being for

[1] Reported by Joseph P. Hornor, Esq., of the New Orleans bar.

cash. On the following day the cotton was delivered to the said defendant, through the warehouseman, where the same was stored. On the sixth of June the said defendants paid upon this purchase the sum of $1,800, which they derived by or from advances made by intervenors on bill of lading for the cotton, leaving unpaid the balance of the price of the cotton, viz., the sum of $10,865.25. The cotton was an agricultural product of the state of Louisiana, and the sale was made to the defendants by the plaintiffs in the city of New Orleans. On the sixth of June all of the cotton was either laden on board or delivered in the possession of the steam-ship Counsellor, bound for Liverpool, and bills of lading in regular form were on that day issued for said cotton by the master of said steam-ship, and were on the same day transferred by the usual indorsement to the intervenors, Brown Bros. & Co., who paid for the same the sum of £2,680, in the currency of the United States $13,400, the full value of the cotton. On June 7th the plaintiffs instituted this suit, claiming a vendor's lien for the unpaid balance of the price of the cotton, and on the same day sequestered the cotton and took it out of the possession of the master of the said steam-ship Counsellor, who held the same for shipment, having given the said bills of lading therefor.

As the conclusions of law, drawn from these facts, the court finds:

(1) That the acts of 1868, No. 150, and of 1876, No. 72, mean that the bills of lading and warehouse receipts for property shipped or warehoused shall fully represent the property, so that a transfer of those paper titles shall vest in the transferee the property as fully as a sale accompanied by a delivery of the property itself. (2) That the acts of 1854 and 1855, now found in Civil Code, art. 3227, since they give the right to the vendor to seize the thing sold *in whatsoever hands* or *place* they may be found, and enforce his lien for the price, which the statute declares shall have preference over all other claims, operates as well against those who hold under purchase through bills of lading as well as by transfer and actual delivery. (3) That the plaintiffs' claim must prevail over that of the intervenors'.

Therefore the plaintiffs must have judgment enforcing their rights upon the cotton to the extent of the unpaid price. To that extent the intervenors' claim is dismissed; beyond that, allowed. Plaintiffs must have judgment against the defendant for all costs prior to the intervention, and all costs subsequent to the intervention must be paid out of the cotton sequestered.

---

(*Extract from Act No. 150, of the Legislature of Louisiana of 1868, Referred to Above.*)

Sec. 6. Be it further enacted, etc., that cotton-press receipt given for any goods, wares, merchandise, grain, flour, or other produce or commodity stored or deposited with any cotton-press, wharfinger, or other person, or any bill of lading given by any forwarder, boat, vessel, railroad, transportation or transfer company, may be transferred by indorsement therein, and any person to whom the same may be transferred shall be deemed and taken to be the owner of the goods, wares, merchandise, grain, flour, or other produce, or commodity therein specified, so far as to give validity to any pledge, lien, or transfer made or created by such person or persons; but no property shall be delivered, except on surrender and cancellation of said original receipt, or bill of lading, of the indorsement of such delivery thereon. In case of partial delivery, all cotton-press receipts, or bills of lading, however, which shall have the words "not negotiable" plainly written or stamped on the face thereof shall be exempt from the provisions of this section.

*(Extracts from Act No. 72 of the Legislature of Louisiana of 1876, Referred to Above.)*

Sec. 4. Be it further enacted, etc., that parties who may borrow money on the faith of warehouse receipt, representing property in store, shall file their affidavit with the pledgees that such property is theirs, the pledgeors' personal property, or that it is the property of some party for whom the pledgeor is acting as agent, factor, commission merchant, or in any other fiduciary capacity; and that said party is justly and truly indebted to the pledgeor in an amount equal in value to the value of the property pledged, as specified in the warehouse receipt, for moneys paid to him or paid by his order and for his account by the party or consignee making the pledge. The cashier of a bank, or the secretary of any insurance company incorporated or working under any law in the United States or of this state, is hereby authorized to administer the oath contemplated under the provisions of this act. Any deviation therefrom shall render the party or parties so deviating liable for the value of the property, or any excess in value over and above the amount for which it may have been pledged in any manner specified in section one of this act, and to prosecute for perjury, and also for obtaining money under false pretenses.

Sec. 5. Be it further enacted, etc., that the vendors' lien of five days privilege, now allowed in commercial transactions for the payment of the purchase price, shall not be affected by the provisions of this act, except in case in which a warehouse receipt has been pledged as collateral for money borrowed. The holder of the warehouse receipt shall be considered and held as the actual owner of the property described in the receipt, and no clause of this act shall operate to the detriment or injury of the holder of a warehouse receipt, to the extent of the value of the property specified, made and issued in accordance with and under the provisions of this act: provided, that where the factor, agent, or pledgeor may have wrongfully pledged, in violation of this act, any property, the lien of the owner shall be valid even against the third holder of the warehouse receipt.

Sec. 8. Be it further enacted, etc., that all warehouse receipts, as by this act provided, shall be negotiable by indorsement in blank, or by special indorsement in the same manner and to the same extent as bills of exchange and promissory notes now are.

---

*(Extract from the Civil Code of Louisiana, Referred to Above.)*

Art. 3227. He who has sold to another any movable property which is not paid for has a preference on the price of his property over the other creditors of the purchaser, whether the sale was made on a credit or without, if the property still remains in the possession of the purchaser. So that, although the vendor may have taken a note, bond, or other acknowledgment from the buyer, he still enjoys the privilege. Any person who may sell the agricultural products of the United States in the city of New Orleans shall be entitled to a special lien and privilege thereon to secure the payment of the purchase money for and during the space of five days only after the day of delivery, within which time the vendor shall be entitled to seize the same in whatsoever hands or place they may be found; and his claim for the purchase money shall have preference over all others. If the vendor gives a written order for the delivery of any such products, and shall say therein that they are to be delivered without vendor's privilege, then no lien shall attach thereto.